## COLUMBIA HEIGHTS REALTY CO. *v.* RUDOLPH ET AL., COMMISSIONERS OF THE DISTRICT OF COLUMBIA.[1]

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 157. Argued April 12, 13, 1910.—Decided May 16, 1910.

Under the act of February 9, 1893, c. 74, § 8, 27 Stat. 436, appeals from and writs of error to the Court of Appeals of the District of Columbia are governed by § 705, Rev. Stat., as to procedure, and by §§ 997 and 1012, Rev. Stat., as to filing the transcript and assignment of error as from a Circuit Court.

Rule 35 refers in terms only to writs of error and appeals under § 5 of the Court of Appeals Act of March 3, 1891, but by Rule 21, it is in effect extended to every writ of error and appeal; and, although errors may not be assigned on a writ of error to the Court of Appeals of the District of Columbia, the court is not under obligation to dismiss the writ in case the assignment of errors is not filed as required by §§ 997 and 1012, Rev. Stat., having by its rules reserved the option to notice plain error whether assigned or not.

In this case the court exercises the option reserved under Rules 35 and 21 to examine the record to ascertain if there are errors not assigned as required by §§ 997, 1012, Rev. Stat., but so plain as to demand correction.

Under the complete jurisdiction which the United States exercises over the District of Columbia it is within the power of Congress to arbitrarily fix a minimum amount to be assessed for benefits on property within the assessment district of a street opening proceeding, and so held as to act of June 6, 1900, c. 810, 31 Stat. 663, as to the opening of extension of Eleventh Street.

Where Congress passes an act superseding a former act in regard to condemnation proceedings and providing for a reassessment of benefits, the reassessment is a continuance of the proceeding under the former act and not a new proceeding; and the assessment for

---

[1] Original Docket Title: Columbia Heights Realty Company *v.* Henry B. F. Macfarland and others, Commissioners of the District of Columbia.

benefits is not barred by the statute of limitations if the proceeding was commenced in time under the original act.

Objections to qualifications of jurors and their examination and oath in condemnation proceedings must be taken at the time.

That counsel was not present when they were accepted and sworn does not invalidate the impaneling of the jury if the statute does not so provide.

On condemnation proceedings where the statute directs the court to follow the procedure prescribed for other proceedings, the court will properly vary the oath so as to relate to the property involved, and not to the property in the other proceedings; and if the bill of exceptions does not show that the essential matters were omitted from the oath, the presumption is that the statutory oath was complied with as far as applicable to the proceeding in which it was administered.

Where a verdict of damages and benefits is set aside as to benefits and a reassessment ordered, the remainder of the verdict as to damages alone does not stand as *res. judicata* that the property is damaged and there are no benefits that can be assessed under a subsequent act as to procedure for reassessment of benefits.

Where doubt as to meaning of one part of the charge is eliminated by other parts of the charge, there is no reversible error.

Where the jury in a condemnation proceeding exercises its own judgment derived from personal knowledge from viewing the premises and from expert opinion evidence not taken in presence of the court, the power of the court to review the award is limited to plain errors of law, misconduct or grave error of fact indicating partiality or corruption, and the court is not required to review all the evidence taken before the jury in order to determine whether the award is unreasonable or unjust where no specific wrong or injustice is pointed out.

Where the evidence in a condemnation proceeding is not before this court and there is no agreed statement of facts this court cannot determine that the trial court erred in holding the award of the jury made on viewing the premises and expert evidence not so unreasonable or unjust as to require a new trial before another jury.

31 App. D. C. 112, affirmed.

THE facts are stated in the opinion.

*Mr. Leo Simmons* and *Mr. Arthur A. Birney* for plaintiff in error.

*Mr. James Francis Smith,* with whom *Mr. Edward H. Thomas* was on the brief, for defendants in error.

MR. JUSTICE LURTON delivered the opinion of the court.

In 1899, the then Commissioners for the District of Columbia filed a petition in the Supreme Court of the District for the condemnation of land necessary for the extension of Eleventh street northwest. In due course the statutory jury of seven filed an award of damages and of benefits. The verdict was confirmed so far as it awarded damages for the property, but was disaffirmed and vacated as to the amount of benefits. The award so far as it assessed the damages was accepted and the money has long since been paid; but from the order setting aside or vacating the assessment of benefits the Commissioners appealed to the Court of Appeals of the District, where that order was reversed and the proceeding remanded to the lower court with direction to vacate the order setting aside the amount of benefits, "and for such further proceedings in the case according to law as may be just and right." The Supreme Court of the District on March 4, 1904, in obedience to the mandate of the Court of Appeals, set aside its former order vacating the assessment of benefits by the jury, and thereupon heard the matter upon exceptions of the defendants to the award, and upon the motion of the petitioners for a confirmation of the award of benefits. Whereupon an order was made denying confirmation, and ordering that "in case the petitioners desire to proceed further in the premises, they shall within a reasonable time make application to this court for directions to the marshal to summon a jury of twelve, as provided by law." From this order refusing confirmation the petitioners prayed an appeal, but did not perfect same. The next step in the case was taken on June 17, 1904, when the land owners moved the court

to dismiss the proceeding, assigning as reason, therefor that "the law under which such proceeding must be had has been repealed," and, second, "for failure of peti-. tioners to proceed as required by the order of this court of March 4, 1904." Upon this motion the court, on June 17, 1904, made an order in these words:

"Upon consideration of the proceedings herein and the motion filed by Abner Greenleaf and others on June 17th, A. D. 1904, it is by the court, this 17th day of June, A. D. 1904, ordered: That the petitioners in the above-entitled cause, within sixty days from the date hereof proceed in the matter of the reassessment of benefits herein, in accordance with the terms and provisions of the act of Congress approved June 6, 1900, entitled 'An Act for the Extension of Columbia Road east of Thirteenth Street, and for other purposes.' "

Thereupon the then Commissioners, in continuance of the old proceeding under the act of March 3, 1899, c. 430, 30 Stat. at Large, page 1343, filed an amended and supplementary proceeding according to the terms of the later act of June 6, 1900, c. 810, 31 Stat. at Large, page 668, in which, after setting out all of the proceedings under the pending petition, they prayed for a reassessment of benefits against abutting and adjacent owners whose lands had not been assessed for benefits as required both under the former and latter acts of Congress in respect to the extension of Eleventh street northwest. Under this amended petition a jury of seven was impaneled, who returned an assessment of benefits against the plaintiffs. This, after exceptions had been overruled, was confirmed. A writ of error was taken by the plaintiffs in error to the Court of Appeals for the District of Columbia, where the judgment of the Supreme Court was affirmed. Thereupon this writ of error was sued out.

This protracted litigation is now before us, unaccompanied by an assignment of errors.

The act of February 9, 1893, ch. 74, § 8, 27 Stat. at Large, 436, concerning writs of error and appeals from the Court of Appeals of the District of Columbia, provides that they shall be allowed in the "same manner and under the same regulations as heretofore provided for in cases of writs of error on judgment or appeals from decrees rendered in the Supreme Court of the District of Columbia." The procedure referred to is that found in § 705, Rev. Stat., which provides that such writs or appeals shall be allowed in the "same manner and under the same regulations as are provided in cases of writs of error on judgments or appeals from decrees rendered in a Circuit Court."

Sections 997 and 1012, Rev. Stat., require the transcript from the Circuit Court to be filed with an assignment of errors, and the thirty-fifth rule of this court prescribes the character of such assignments, and "that no writ of error or appeal shall be allowed until such assignment of errors shall have been filed, . . ." and that "errors not assigned according to this rule will be disregarded, but the court, at its option, may notice a plain error not assigned." This rule refers in terms only to writs of error and appeals under § 5 of the act of March 3, 1891, but it is, in effect, extended to every writ of error or appeal to or from any court by rule 21, which requires that the brief shall set out "a specification of the errors involved." This "specification of error" must conform to rule 35 in particularity. Thus the fourth paragraph of rule 21 provides: "When there is no assignment of errors, as required by § 997 of the Revised Statutes, counsel will not be heard, except at the request of the court; and errors not specified according to this rule will be disregarded; but the court, at its option, may notice a plain error not assigned or specified."

The court has, however, not regarded itself as under any absolute obligation to dismiss a writ of error or ap-

peal because of the non-assignment of errors as required §§ 997 and 1012, Rev. Stat., having, by its rules, reserved the option to notice a plain error whether assigned or not. *Ackley School District* v. *Hall,* 106 U. S. 428; *Farrar* v. *Churchill,* 135 U. S. 609, 614; *United States* v. *Pena,* 175 U. S. 500, 502.

In the present case the brief of counsel for the plaintiffs in error specifies ten alleged errors. The defendants in error have made no objection for failure to assign error under §§ 997 and 1012, Rev. Stat., but have submitted the case upon the specifications of error in the brief of the plaintiffs in error. For these reasons we shall exercise the option reserved under both rules 21 and 35 of examining the transcript that we may be advised as to whether there has occurred any "plain error" which obviously demands correction.

1. Did the court err in allowing an assessment of benefits under the act of June 6, 1900? We think not. Under the proceedings had theretofore under the act of March 3, 1899, c. 431, 30 Stat. 1344, there had resulted a condemnation of the land needed for the extension of Eleventh street northwest, and an assessment of damages sustained by the land owners, which award had been confirmed and the money paid. But that act provided "that of the amount found due and awarded as damages for and in respect of the land condemned under this section for the opening of said streets, not less than one-half thereof shall be assessed by the jury in said proceedings against the pieces and parcels of ground situate and lying on each side of the extension of said streets, and also on all or any adjacent pieces or parcels of land which will be benefited by the opening of said streets as herein provided." Objection to this arbitrary fixing of the minimum amount to be assessed for benefits upon lots benefited by the opening of the street was considered, and the act sustained as within the complete jurisdiction which

the United States possesses over the District of Columbia, in the case of *Wight* v. *Davidson*, 181 U. S. 371. The benefits assessable under that act were separately found as against each parcel of property supposed to be benefited, but that part of the award of the jury was vacated upon the erroneous supposition that the rule for assessment of benefits in the act was void. This action of the District Court, as we have already seen, was reversed. Thereupon the District Court denied the motion of the Commissioners to affirm the verdict of the jury assessing benefits. In this situation it was open to the Commissioners to apply for another jury. Before they did so the special act of June 6, 1900, was passed. The effect of the action of the court in refusing to confirm the first assessment of benefits was to make void the award and verdict of the jury, in so far as that verdict had separately found the benefits accruing to the property by the extension of the street. The Commissioners were therefore complying with the direction to them found in the twelfth section of the act of Congress of June 6, 1900. That act provided that the Commissioners should make application to the Supreme Court of the District of Columbia "for the final ratification and confirmation of the awards of the jury for and in respect to the land condemned for the extension of Eleventh street," etc. And "in the event that the assessments for benefits levied by the jury in relation to said Eleventh street shall for any reason be declared void, the said Commissioners . . . are authorized and directed to make application to said court for a reassessment for such benefits under and in accordance with the provisions of this act." The procedure under this act differs in many particulars from that under the act of 1899. In view of this the property owners, on June 17, 1904, moved the court to dismiss the old proceeding, basing the motion, as shown by the entry upon the journal of the court upon the contention that

"the law under which such proceeding must be had has been repealed," and, "for failure of the petitioners to proceed as required by the order of this court," of March 4, 1904. Thereupon the court made the order heretofore set out, requiring a reassessment of benefits under the later act.

There is no possible doubt as to the correctness of this order. The new act superseded the former act in so far as the reassessment of benefits was concerned. Both parties seemingly concurred in assuming that this was the case, and that the refusal of the court to confirm the original assessment of benefits was an annulment of the award of benefits by the first jury. The order was in part based upon the motion of the plaintiffs in error, and was made without protest or objection, and none was suggested for more than a year. Such a reassessment was but a continuance of the original proceeding, which might well be done by an amended or supplementary petition by virtue of the authority of the new act. This disposes also of the contention that the proceeding for reassessment of benefits was barred by the statute of limitations of three years. The proceeding for reassessment was not a new action, but a continuance of the old one, and therefore not subject to the operation of the statute.

2. Coming now to the errors assigned upon the procedure under this petition for a reassessment of benefits. The first objection is that the court did not examine the jurors as to whether they possessed the qualifications required by § 4 of the new act, nor administer to them the oath required by the statute under which the court was proceeding.

These objections come too late. The statute made it the duty of the court to hear objections to jurors "before accepting them." None was made. So with the oath; if that administered departed in any particular from

the terms of the statute, objection should have been made at the time. None was made, and only after the verdict was any made. The journal entry, moreover, recites that the jurors summoned by the marshal, under the order theretofore made, were "accepted as qualified," and that the oath was administered to them "in accordance with the provisions of the act of Congress of June 6, 1900." It is now sought to contradict the record by a statement contained in a bill of exceptions allowed after final judgment, that counsel for the plaintiff in error was not present when the order of record was made and the jury accepted and sworn, and that after they had been so accepted and sworn, counsel was denied the right to examine the jurors as to their qualifications. In respect to the oath administered the bill of exceptions contains the meagre statement that the jurors were sworn to "assess the benefits accruing to the property, abutting or adjacent to Eleventh street extended, according to the statute."

The oath which is required to be administered by § 4 of the act of June 6, 1900, under which the court was proceeding, was an oath applicable only to the condemnation of land for an extension of the Columbia road, and the jury were to be sworn to *assess the damages and benefits resulting from the extension of that road.* Such an oath in the present case, when only benefits were to be assessed for property already taken and paid for, *upon another street altogether,* was of course not applicable. The court, in such circumstances, required as it was to follow the procedure of the Columbia road statute, was perfectly justified in swearing the jury to assess benefits to the property concerned in this proceeding. True, the oath prescribed by § 4 includes an affirmation that the jury was disinterested and unrelated and would act without favor or partiality, but the statement in the bill of exceptions does not show that these matters were omitted from the oath, and the presumption remains that the

statutory oath was followed as far as applicable, which is the implication from the journal entry.

As to the qualifications of the jurors: Primarily, they had been summoned, as shown by the order to the marshal and his return, as men having the statutory qualifications. The journal recites that the court "accepted them as qualified." No hint is found in this transcript that they were not qualified, or that they were guilty of any misconduct. Not having asked the court to examine them before accepting them, or to be then permitted to qualify them, it was not reversible error to deny the privilege after they had been sworn and accepted. That counsel was not present when they were accepted and sworn does not invalidate the impaneling of the jury. Under the statute and the warning order, the parties interested were required to be present and "continue in attendance" until the matter was ended.

3. It is assigned as error that the court erred in overruling the plea of *res judicata* as to lots 1 and 30 in block 27, and lots 1 to 16 in block 28. The plea was not good.

The first jury, that which under the act of March, 1899, assessed both damages and benefits, was, under that act, required to award damages not only for land taken for the extension of the street, but also damages to the remainder of the land by being left high above or below the grade. The then owners of these lots were awarded such grade damages to land not taken, which award has been confirmed and paid. But the same jury, as they were instructed to do, assessed the benefits sustained to the remainder, not taken, separately. This part of the verdict was set aside; so that, as it stands, the plaintiffs have been paid the damages sustained to the property not taken by reason of the grade resulting, but have never been assessed for the benefits accruing to the same untaken remainder. It is now said that the confirmation of the amount of damages is an adjudication

that the lots not taken were damaged and not benefited. But that is not the legal construction of the judgment, for the real damages have never been reduced by the benefits which the statute says shall not be less than fifty per cent of the damages sustained. The former judgment was conclusive only as to the damages, and that has not and could not be reopened. The benefits having been separately stated in that verdict remained to be determined and were properly reassessed under the later act of Congress.

4. Alleged error in instructions given or refused.

The sixth assignment noticed in the brief is error in giving the first instruction asked by the Commissioners. This request was in these words:

"It is the duty of the jury to consider and assess the benefits which have resulted to the pieces or parcels of land on each side of Eleventh street northwest, as extended from Florida avenue to Lydecker avenue, and the benefits which have resulted to any and all other pieces or parcels of land from the extension; and in determining the amounts to be so assessed against said pieces or parcels of land, the jury shall take into consideration the respective situations of the said pieces or parcels of land, and the benefits that they have severally received from said extension of said Eleventh street. By extension of the street the jury are to understand its establishment, laying out, and completion for all the ordinary uses of a public thoroughfare, or highway."

The objection to this seems to be that the jury was not limited to the benefits resulting immediately from the opening of the street, but might consider all enhancement which might come from subsequent improvement of or upon the street. But this was not the whole of the instruction of the court upon that subject, and any doubt as to what the court did mean was eliminated by other parts of the charge. Thus the court said that to lay an

assessment for benefits against any piece of land abutting
upon said street or adjacent thereto the jury must find
that the benefits upon which such assessment is based
was brought about by the extension of said street, and
not by any improvement made since it was extended, or
by the extension of car lines in said street. Again, the
court said that such benefits must accrue "immediately
from the extension of the street in question." This was
repeated, when it was said that "the benefit assessable
must be an enhancement in value immediately upon the
opening and extension of said street," and that they had
"no right to consider any enhancement or increase in
value that is the result of any special improvements made
on the street after it was opened and established as
previously stated." There is no reason for doubting the
meaning of the court.

The several requests made by the plaintiffs in error
were sufficiently covered by the charge as given.

5. The next specification of error in the brief is in these
words: "The court erred in refusing to review the evi-
dence taken before the jury and to determine if the ver-
dict was unjust and unreasonable." The act of June 6,
1900, under which the court was proceeding, required
the jury to go upon and view the premises, and then to
hear and receive such evidence as might be offered, in
the presence of the court, or otherwise, as the court
might direct, and to then return the majority verdict as
to the amount of benefits against the property involved.
In this case the evidence was not heard by the jury in
the presence of the court, that being according to the
order of the court.

The act further provides that "the court shall have
power to hear and determine any objection which may
be filed to said verdict or award and to set aside and va-
cate the same, in whole or in part, when satisfied that it
is unjust or unreasonable, and in such event a new jury

shall be summoned, who shall proceed to assess the damages and the benefits as the case may be," etc.

This specification of error has for its foundation the concluding paragraph of the bill of exceptions, as follows:

"The foregoing substance of the testimony taken before the said jury was abstracted by the appellant from the testimony filed as an affidavit in the case by order of the court. After the counsel had argued the case upon the propositions of the law raised by the exceptions, counsel for the appellant, in support of its motions and exceptions, offered to read to the court the said testimony, but the court declined to hear the same or consider it at the time in full, counsel saying that it would be his purpose to consider the same if the court found, after consideration, the propositions of the law were against the appellant. But counsel had no further opportunity to argue said case on the evidence, and without reading the evidence, or hearing it fully read, the court passed an order overruling all the exceptions, and confirming said verdict, and refused to consider said testimony any further, and the appellant excepted.

"And thereupon the appellant presented to the court, the justice who presided at the hearing in this case and made the rulings herein referred to, this its bill of exceptions containing the proceedings before the court and before the jury or commission with the substance of the evidence taken before the said jury, and the affidavits filed in the case subsequent thereto, as herein referred to, with the exceptions as therein noted, which were duly taken by the appellants separately, in the order in which they appear, and allowed by the court at the time."

The certificate was in these words:

"And the said appellant by its counsel prays the court to sign and seal this its bill of exceptions and make the same a part of the record in this case, which is now accordingly done, and the said bill of exceptions is here

now signed and sealed in due form and made a part of the record in this case this 14th day of August, 1907, *nunc pro tunc.*"

Why the court should be required to read, or hear read, "in full," a paper which was confessedly but the substance of the testimony taken before the jury, as "abstracted by appellants from the testimony filed as an affidavit in the case," we are at a loss to know. The power of the court to review the award by such a jury must in the very nature of the matter be limited to plain errors of law, misconduct or grave error of fact indicating plain partiality or corruption. The jury saw and heard the witnesses; the court did not. The jury went upon and viewed the premises; the court did not. The duty to review did not involve mere error in judgment as to the extent of enhancement in value, for the judgment of the jury manifestly rested upon much which could not be brought before the court. The jury was expected to exercise its own judgment, derived from personal knowledge from a view of the premises, as well as from the opinion evidence which might be brought before them. *Shoemaker* v. *United States*, 147 U. S. 282. No specific wrong, injustice or error is pointed out. Even if we had all of the evidence before us, it would not be within our province to weigh it. But we have not, nor is there any agreed statement of facts. It is impossible for us to say, therefore, whether the trial court erred in holding the award not unreasonable, or so unjust as to require a new trial before another jury. Other matters complained of in argument need not be specifically referred to.

We find no error and the judgment is

*Affirmed.*